# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                          Case No. 2:24-cr-20200-MSN-tmp

JUSTIN BOBO,

    Defendant.

## ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, AND DENYING MOTION TO SUPPRESS

Defendant has moved to suppress all evidence found during a search of his vehicle on March 6, 2024 (ECF No. 20, "Motion"). The Court referred Defendant's Motion to the Chief Magistrate Judge, who held an evidentiary hearing and issued a Report and Recommendation (ECF No. 34, "Report"). The Report recommended that Defendant's Motion be denied. Defendant filed objections to which the government has responded.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections *de novo* and "accept, reject, or modify the

recommendation." Fed. R. Crim. P. 59(b)(3). Failure to object to a magistrate judge's findings or conclusions results in forfeiture of those objections. Fed. R. Crim. P. 59(b)(2).[1]

"The filing of objections to a magistrate [judge]'s report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's report must be "specific." Fed. R. Crim. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate [judge]'s report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."); *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate [judge]'s suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context.") The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985).

---

[1] Although the text of the Rule 59(b)(2) provides that a failure to object "waives a party's right to review," the Sixth Circuit has clarified that a failure to object is not a waiver, but a forfeiture. *Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019) ("We clarify that forfeiture, rather than waiver, is the relevant term here.") (explaining, "*Thomas v. Arn* held that 'the failure to file objections to the magistrate's report *waives* the right to appeal the district court's judgment,'" but *Arn* preceded the Supreme Court's clarification in *United States v. Olano*, 507 U.S. 725, 733 (1993).)  The difference matters because forfeited issues may nevertheless be considered on appeal in certain circumstances. *Id.* (citing *Harris v. Klare*, 902 F.3d 630, 635–36 (6th Cir. 2018)).

## **DISCUSSION**

A.   **Findings of Fact**

"For the most part," Defendant does not object to the Report's Proposed Findings of Fact. (*See* ECF No. 40 at PageID 126.) Defendant, however, objects to the Chief Magistrate Judge's finding that Officer Estopare was credible. Defendant posits that Officer Estopare was trying "to provide multiple rationale for the warrantless search of the vehicle," and the Court should find that he was not credible due to his lack of candor. (ECF No. 40 at PageID 127.)

Having presided over the evidentiary hearing, the magistrate judge "had the opportunity to view [each] witness on the stand and assess [the witness's] demeanor," *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001), so he is "in the better position to assess the credibility of witnesses" he heard during the evidentiary hearing. *United States v. Woodruff*, 830 F. Supp. 2d 390, 402 (W.D. Tenn. 2011) (Mays, J.) (quoting *United States v. Robinson*, No. 1:07–CR–1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)). And because the magistrate judge "personally listened to the testimony of a witness," his credibility determination "should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Brown*, No. 1:07–CR–9, 2007 WL1345463, at *1 (E.D. Tenn. May 7, 2007); *see also United States v. Tyler*, 2:10-CR-20124-STA, 2011 WL2551177 (W.D. Tenn. June 27, 2011); *United States v. Tuggle*, No. 2:10–cr–20042–JPM–tmp, 2011 WL 692812, at *1 (W.D. Tenn. Feb. 18, 2011) (quoting *United States v. Freeman*, 412 F. App'x 735, 743 (6th Cir. 2010)).

Defendant objects to the Chief Magistrate Judge finding that Officer Estopare was credible. In support, Defendant includes several specific points in numbered paragraphs. But after a *de novo* review, none of these things, either individually or together, make this Court question the Chief

3

Magistrate Judge's credibility determination. Each of Defendant's specific points is addressed in turn below.

First, Defendant objects to Officer Estopare's assertion that he had probable cause to search Defendant's vehicle based on the investigation of a reported aggravated assault; Defendant argues that Officer Estopare's investigation was based on "a report from a person he never spoke with." (ECF No. 40 at PageID 126.) Defendant says that the investigation in this case began with a call to 911 in which the caller reported she was run off the road and had a gun pulled on her. Defendant objects that the government did not call the alleged victim as a witness at the suppression hearing and says that the victim later declined to press charges against Defendant. (ECF No. 40 at PageID 127.) Defendant argues that because of these things, Officer Estopare's "testimony and credibility" are key factors in the Court's analysis. (*Id.*)

None of the above adversely affects Officer Estopare's credibility. As Defendant says, the investigation began due to a call to 911. Defendant does not dispute this, nor does Defendant dispute what the caller told the 911 dispatcher. Because Defendant does not dispute those things or provide other specifics, the Court does not know why Defendant believes that the alleged victim's absence is significant or why Defendant objects to the government not calling her to testify. Defendant also could have subpoenaed the alleged victim to testify, but he apparently chose not to do so.

It also does not matter that Officer Estopare did not speak directly to the alleged victim. Officers are allowed to make investigatory stops if they have reasonable suspicion, which can be based on information obtained by other officers or police dispatchers. *See, e.g.*, *Bey v. Falk*, 946 F.3d 304, 316 (6th Cir. 2019) (collecting cases); *United States v. Kaplansky*, 42 F.3d 320, 327 (6th Cir. 1994) (en banc) (finding that in making a *Terry* stop, officers were allowed to rely on

4

dispatcher's conclusion that the defendant was suspicious "without inquiring into the basis of the dispatcher's knowledge"); *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (explaining that reasonable suspicion to stop someone "need not arise exclusively from [an officer's] direct observations," and that "it can be derived from such sources as informant tips, dispatch information, and directions from other officers").

Defendant also asserts that Officer Estopare's statement that he found a felony amount of drugs was "called into question during the suppression hearing." (*Id.* at PageID 126.) According to Defendant, Officer Estopare initially said that he had probable cause to search Defendant's vehicle based on the felony amount of drugs found on Defendant, yet he later "repeatedly admitted that the amount" of drugs found were consistent with personal use and that "there were other factors to consider" when determining if drugs constituted "felony amounts." (ECF No. 40 at PageID 127.)

These objections lack merit. To clarify, there is no dispute about the amount of marijuana found on Defendant, which was approximately 30.5 grams. (ECF No. 34 at PageID 55 n.2.) Under Tennessee law, that amount may constitute a felony. *See* Tenn. Code Ann. § 39-17-417(g)(1) (Class E felony to possess with intent to distribute at least one-half ounce, or 14.175 grams, up to 10 pounds of marijuana). At the scene, Officer Estopare estimated the amount of marijuana found with relative accuracy, telling other officers that it was "probably close to an ounce." (*See* ECF No. 39 at PageID 105; Exhibit 4 beginning at 5:07.)

The objection also mischaracterizes Officer Estopare's testimony. The portion of the transcript that Defendant cites in support of his argument contains the following questions and answers from Officer Estopare's cross-examination:

> Q. Okay. And when, I guess, you were assisting in the arrest, you could hear my client say, I have a blunt; is that right?

5

A. Yes.

Q. Okay. And a blunt, that's something you smoke weed with, right?

A. Yes.

Q. Okay. And a blunt isn't a sign of any kind of trafficking, is it? It's a sign of somebody personally using that marijuana, right?

A. Yes.

Q. Okay. Also found in that bag in evidence are a couple of other things. Do you know what they are, besides the marijuana?

A. I do believe that a scale was dropped in the parking lot.

Q. What else?

A. That was tagged. What else was in the bag, I do not recall.

Q. You don't know, okay. Well, would it surprise you that in that bag were some rolling papers?

A. No, that would not surprise me.

Q. Would it surprise you that there were some dental flossers?

A. No.

Q. Okay. So it's fair to say that those things are not signs of any kind of drug trafficking, right?

A. Not dental floss and rolling papers, no.

Q. Signs of personal use?

A. Yes.

Q. And I know you keep talking about the felony amount of marijuana, but to determine if a possession of drugs is a felony, there are other things that might show that it's felony or possession with intent to distribute, right?

A. Yes.

Q. Like large amounts of money?

A. Yes.

Q. And Lieutenant said, don't have that, right?

    A. Yes.

    Q. Okay. Maybe the way that the marijuana would be packaged, that would be another way to determine if that's, in fact, a felony as opposed to maybe a misdemeanor possession, right? You know, like a bunch of bags.

    A. If it's packaged individually, yes.

    Q. Okay. And in this situation, the bag was originally on his person, right? I call it a fanny pack, but the Jordan bag, right?

    A. Yes.

    Q. Okay. And there wasn't any other marijuana found, right?

    A. No.

    Q. Okay. And other than, I guess, maybe the amount, which is not a really large amount in your experience, right?

    A. No.

    Q. Okay. Looks kind of like for personal use. He even said he had been smoking, right?

    A. Yes, he did.

    Q. Okay. So there was no tow of the car, right?

    A. Correct.

    Q. Right. The amount of marijuana could have been for personal use, right?

    A. It could have been.

(ECF No. 39 at PageID 109–11.)

    As seen above, at the end of several questions, Officer Estopare agrees that the amount of marijuana "could have been" for Defendant's personal use.  And he also agreed with counsel that sometimes there is other circumstantial evidence that indicates drugs are being possessed with an intent to distribute.  But there is nothing inconsistent in Officer Estopare's testimony that causes this Court to question his credibility generally or his specific testimony that he was investigating a potential felony based on the amount of marijuana.

Next, Defendant asserts that Officer Estopare is not credible because he testified that he was mandated to tow the vehicle based on the amount of drugs found, but then he later testified that he did not tow the vehicle because his lieutenant told him that he had discretion about whether to tow the vehicle. (ECF No. 40 at PageID 127.)

The relevant Memphis Police Department policy states as follows:

4.3.1    Vehicle Towed for Evidentiary Purposes

    1.    When there is probable cause to believe that a vehicle is needed for evidentiary purposes (vehicle is evidence or contains evidence of a crime), the vehicle should be towed to the CSI Office, located at the Vehicle Impound Lot.

(*See* Exhibit 5.) It is true that Officer Estopare's testimony was in absolute terms—that the vehicle *must* be towed, (ECF No. 39 at PageID 105), while the policy says "*should*." And on cross-examination, he also acknowledged that had discretion about the decision to tow Defendant's vehicle. This discrepancy, however, does not cause the Court to question Officer Estopare's overall credibility.

Finally, Defendant suggests that Officer Estopare's testimony at the suppression hearing lacked candor because he was "aim[ing] to provide multiple rationale for the warrantless search of the vehicle." (ECF No. 40 at PageID 127.) Again, the Court is not persuaded. First, the bare fact that Officer Estopare gave "multiple rationale" does not indicate a lack of candor. It is not unusual for there to be more than one legal basis for a warrantless vehicle search. Nor were Officer Estopare's justifications only recently developed; his body camera recorded him providing these same explanations to Defendant's girlfriend at the scene.[2] (*See* Exhibit 4, beginning at 34:35.)

---

[2] While still at the scene, Officer Estopare speaks briefly to Defendant's girlfriend and explains to her what happened. As part of that explanation, he tells her that an aggravated assault report will be done, and that Defendant was also being arrested for the marijuana. He also told her that Defendant told him that the vehicle was their only means of transportation, and that was part of why Defendant was allowed to call her to come get the car. (*See* Exhibit 4, beginning at 34:35.)

Finally, the explanations are consistent with Officer Boyd's testimony. (*See* ECF No. 39 at PageID 84–85 (testifying that Defendant was facing charges for aggravated assault, evading arrest, possession of a controlled substances, and possession of drug paraphernalia); *id.* at PageID 85–86 (Officer Boyd believed he had probable cause to search the vehicle for the gun used in the alleged aggravated assault and other drugs and drug paraphernalia); *id.* at PageID 96 ("we had probable cause to search the vehicle")).

In sum, after a *de novo* review, the Court finds no reason to question the Chief Magistrate Judge's assessment that Officer Estopare was credible. Defendant's objections to the Proposed Findings of Fact are **OVERRULED**. The Report's Proposed Findings of Fact are **ADOPTED** in their entirety.

**B.**     **Conclusions of Law**

The Report concludes that the warrantless search of Defendant's vehicle was permissible as a search incident to arrest and pursuant to the automobile exception to the warrant requirement. Defendant objects to both conclusions. First, he argues that the search of his vehicle occurred during a *Terry* stop, so it was not incident to his arrest. And he reasons that, because he did not have access to the Vehicle's passenger compartment at the time of the search, the officers were not permitted to search it. (ECF No. 40 at PageID 128.) Second, Defendant asserts that the police did not have probable cause to support a warrantless search under the automobile exception.

A quick review of the relevant facts. Police received a call that an unknown male driving a white Nissan Rogue with Tennessee plate number BQH410 had attempted to run a woman off the road and then brandished a gun at her. (ECF No. 34 at PageID 54.) Less than 15 minutes after receiving that call, Officer Boyd spotted the Nissan Rogue described by the 911 caller in a parking lot. (*Id.*) Officer Boyd pulled behind the vehicle and double-checked that the license plate

matched the description given by the 911 caller. (*Id.*) Officer Boyd then exited his vehicle just as Defendant exited the Nissan Rogue. (*Id.*; *see also* Exhibit 4 at 1:07.) Defendant walked away from the vehicle and refused to talk with Officer Boyd. (ECF No. 34 at PageID 55; *see* Exhibit 4.) When Officer Boyd continued walking toward him, Defendant ran. (ECF No. 34 at PageID 55; *see* Exhibit 4.)

Officer Boyd chased Defendant, and during the chase, a scale fell out of the black bag Defendant was wearing across his body. (ECF No. 34 at PageID 55; ECF No. 39 at PageID 82.) A few moments later, Defendant dropped his black bag when he tripped and fell running across the street. (ECF No. 34 at PageID 55; Exhibit 4 at 2:33.) Officers caught up to Defendant shortly after that fall and took him into custody. (ECF No. 34 at PageID 55.) When they searched Defendant, Officers found a marijuana blunt and the keys for the Nissan Rogue. (ECF No. 34 at PageID 55.) And when officers searched the black bag Defendant had just dropped, they found a little over an ounce of marijuana, rolling papers, and dental flossers. (ECF No. 34 at PageID 55.)

1. <u>Search Incident to Arrest</u>

The Chief Magistrate Judge first analyzed the search of Defendant's vehicle as a search incident to arrest. (ECF No. 34 at PageID 59–61.) In his Motion, Defendant says that his interaction with the police "began as a brief investigatory detention or *Terry* stop and ultimately ripened into an arrest," and he concedes that "there was probable cause to arrest him." (ECF No. 20 at PageID 30.) Despite this concession, Defendant says that the search was not permissible incident to his arrest; he asserts that the search should be governed by the standards applicable to *Terry* stops, not arrests. (ECF No. 40 at PageID 128; ECF No. 20 at PageID 30.)

After officers caught up to Defendant, they discovered marijuana, rolling papers, and a blunt in the bag he was carrying, and a scale that he had discarded while running from Officer

Boyd. At that point, officers had probable cause to arrest Defendant for drug possession.[3] *See United States v. Santiago*, 139 F.4th 570, 573 (6th Cir. 2025) (finding that officers had probable cause to arrest the defendant based on strong smell of marijuana coming from the defendant) ("A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence, even if the crime was very minor." (cleaned up)); *United States v. Stubblefield*, 682 F.3d 502, 508 (6th Cir. 2012); *United States v. Vaughan*, 512 F. App'x 459, 460–61 (6th Cir. 2013). Officers immediately detained and handcuffed Defendant, and he was legally under arrest. *See United States v. Richardson*, 949 F.2d 851, 856–58 (6th Cir. 1991) ("It does not take formal words of arrest or booking at a police station to complete an arrest. It takes simply the deprivation of liberty under the authority of law." (cleaned up)); *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980) (explaining that a person has been "seized," or arrested, for Fourth Amendment purposes when "by means of physical force or a show of authority, his freedom of movement is restrained" or when a "reasonable person would have believed that he was not free to leave").

But even if Defendant was not *formally* arrested until shortly after the search, it would not matter because "a formal custodial arrest need not precede the search as long as the formal arrest follows quickly on the heels of the challenged search and the fruits of that search were not necessary to sustain probable cause to arrest." *United States v. Latham*, 763 F. App'x 428, 431 (6th Cir. 2019) (cleaned up) (quoting *United States v. McCraney*, 674 F.3d 614, 619 (6th Cir. 2012))

---

[3] In the Sixth Circuit, officers can arrest an individual without a warrant if they have probable cause to believe that the individual has committed a felony or a misdemeanor. *Farris v. Oakland Cnty.*, 96 F.4th 956, 963 (6th Cir. 2024) (felony); *United States v. Jones*, 55 F.4th 496, 501 (6th Cir. 2022) ("And our court has held that the offense need not even have been committed in the officer's presence to satisfy the Fourth Amendment—probable cause alone is sufficient to seize a person suspected of a misdemeanor." (citations omitted)).

11

(collecting cases in support). That applies here. Officers had probable cause to arrest Defendant for the drug possession. That conclusion is not in dispute, and Defendant even conceded it in his Motion. And the fruits of the vehicle search were not necessary to sustain the probable cause to arrest Defendant for the marijuana possession. So it is of no consequence whether the search occurred immediately before or after Defendant was formally arrested.

Because Defendant was arrested, it was permissible for the officers to search Defendant's vehicle for evidence related to the drug possession, the crime of arrest,[4] because it was "reasonable to believe evidence relevant to" that crime "might be found in the vehicle." *Arizona v. Gant*, 556 U.S. 332, 343, 347 (2009) (Scalia, J., concurring in judgment)); *see United States v. Alexander*, 954 F.3d 910, 917 (6th Cir. 2020) ("Assuming that, upon finding the methamphetamine [in the defendant's waistband], police would have arrested [the defendant] for drugs as well as the driving infraction, the vehicle search was a valid search incident to arrest."); *United States v. Burns*, 298 F.3d 523, 542 (6th Cir. 2002) ("Once the bag of crack cocaine was found in plain view, the officers had probable cause to believe that other contraband might be in the car."); *United States v. Burnett*, 791 F.2d 64, 67 (6th Cir. 1986) ("Determining the existence of probable cause to search on the amount of contraband initially found is a line which need not and should not be drawn. Probable cause has never been defined quantitatively and the appellant's theory that 'smaller is not necessarily bigger' must be rejected."); *United States v. Ivey*, 307 F. App'x 941, 942 (6th Cir. 2009)

---

[4] Whether there was probable cause to arrest Defendant for an aggravated assault prior to the search of the vehicle might be a closer call. In some circumstances, "eyewitness testimony alone can provide probable cause for an arrest if the officers have no reason to believe that the witness intentionally lied or mistakenly recalled the events." *Farris v. Oakland Cnty.*, 96 F.4th 956, 964 (6th Cir. 2024); *see also Brown v. Knapp*, 75 F.4th 638, 647–48 (6th Cir. 2023). But, ultimately, the Court need not determine whether there was probable cause to arrest Defendant for an aggravated assault prior to the search of the vehicle because there was probable cause to arrest him for the drug possession.

(finding that there was probable cause to search a vehicle when officer saw "marijuana hanging out of" a car's visor).

Defendant's objection to the Report's conclusion that the search of his vehicle was permissible incident to his arrest is **OVERRULED**.

2.  Automobile Exception

Defendant also maintains that officers did not have probable cause to search his vehicle pursuant to the automobile exception.

Under the automobile exception, officers may search a vehicle without a warrant if they have probable cause to believe that there is contraband or evidence of criminal activity in the vehicle. *United States v. Whitley*, 34 F.4th 522, 535–36 (6th Cir. 2022); *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). Whether an individual is under arrest does not affect the analysis for the automobile exception. *See United States v. Wilson*, No. 22-1587, 2023 WL 3886406, at *3 (6th Cir. June 8, 2023) (applying automobile exception when the defendant was arrested); *United States v. Washington*, No. 21-5745, 2022 WL 1224553, at *3 (6th Cir. Apr. 26, 2022) (automobile exception is applicable even if the driver is detained); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (officers smelled marijuana coming from vehicle during *Terry* stop, which gave them probable cause to search it pursuant to automobile exception).

"Probable cause is not a high bar." *United States v. Stevenson*, 43 F.4th 641, 645 (6th Cir. 2022) (cleaned up). "A police officer has probable cause to conduct a search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up). *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) ("Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be

found in a particular place." (cleaned up)); *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (describing probable cause as "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion"). When analyzing probable cause, courts "examine the totality of the circumstances from the perspective of the officer at the time of the incident." *United States v. Copeland*, 321 F.3d 582, 592 (6th Cir. 2003).

Defendant exited the Nissan Rogue carrying contraband—marijuana—and fled almost immediately when Officer Boyd approached him. Those things, plus the scale, the rolling papers, and the blunt, gave officers reasonable grounds for believing "it was likely that more [contraband] could be found in the vehicle." *United States v. Wilson*, No. 22-1587, 2023 WL 3886406, at *3 (6th Cir. June 8, 2023) (there was probable cause to search defendant's abandoned vehicle for contraband after officers recovered a gun and drugs that the defendant attempted to discard when he fled); *see Alexander*, 954 F.3d at 917 (methamphetamine in the defendant's waistband plus a bag of money visible to officer outside vehicle established probable cause to search vehicle pursuant to automobile exception); *United States v. Brooks*, 987 F.3d 593, 600 (6th Cir. 2021) (officers had probable cause to search vehicle when they observed smell of marijuana emanating from car and a "marijuana cigar" behind the defendant's ear); *United States v. Guy*, 1 F. App'x 410, 413 (6th Cir. 2001) (officers had probable cause to search vehicle after observing the defendant asleep in the driver's seat holding a "crank pipe").

Because officers had probable cause to believe that there was contraband or evidence of a drug possession crime in Defendant's vehicle, it was permissible for them to search the vehicle without a warrant.[5] Defendant's objection is **OVERRULED**.

---

[5] Because the officers had probable cause to believe there was contraband or evidence of a drug possession crime in Defendant's vehicle, that alone was enough to allow them to search the

14

## CONCLUSION

After a *de novo* review, there is no reason to question the Chief Magistrate Judge's determination that Officer Estopare's testimony was credible. The search of Defendant's vehicle was permissible incident to his arrest. Alternatively, regardless of whether the encounter was still a *Terry* stop or had ripened into an arrest, the officers had probable cause to believe that there was contraband or evidence of a crime in Defendant's vehicle, so their search did not violate Defendant's Fourth Amendment rights. In sum, none of Defendant's objections (ECF No. 40) hold water, and they are **OVERRULED**. The Chief Magistrate Judge's Report and Recommendation (ECF No. 34) is **ADOPTED** in its entirety. Defendant's Motion to Suppress (ECF No. 20) is **DENIED**.

**IT IS SO ORDERED**, this 16th day of July, 2025.

*s/ Mark S. Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

vehicle pursuant to the automobile exception, regardless of whether there was also probable cause to search the vehicle for evidence of an aggravated assault.